UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    Docket No.: 11-CV-862 (NGG)

CHRISTOPHER AND SUMINTRA DRYDEN

                                Plaintiffs,  **FIRST AMENDED COMPLAINT**

-against-

THE CITY OF NEW YORK, POLICE OFFICER   **JURY TRIAL**
MICHAEL ROBBERT (NYPD) SHEILD #6469,   **DEMANDED**
POLICE OFFICER CHRISTOPHER WARD (NYPD)
SHIELD #5165, AND SERGEANT NIKKI PRASAD
(NYPD SUPERVISING OFFICER),

                                Defendants.

------------------------------------------------------------------X

      The Plaintiffs, complaining by their attorney(s), THE LAW OFFICE OF JEFFREY CHABROWE, P.C., respectfully show to this Court and allege:

## JURISDICTION

1. Jurisdiction is founded upon the existence of a Federal Question.

2. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

3. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

4. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Eastern District.

1

## PARTIES

5. Plaintiffs CHRISTOPHER DRYDEN and his wife, SUMINTRA DRYDEN, are both residents of Brownsville, Brooklyn, in the City of New York.

6. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

8. Upon information and belief, at all times hereinafter mentioned, Defendant POLICE OFFICER ROBBERT, POLICE OFFICER WARD, and SERGEANT PRASAD were employed by the Defendant, CITY OF NEW YORK, as members of its police department.

9. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICERS ROBBERT, WARD, and PRASAD worked out of the 73rd Precinct in the neighborhood of Brownsville, Brooklyn in the City of New York.

10. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

11. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

12. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

13. On April 18, 2010, at approximately 10:00PM, Plaintiffs Christopher and Sumintra Dryden heard a knock on the backdoor of their three-family house, which they share with their two children, Jahsani (age 8) and Jahmarli (age 3), as well as Sumintra Dryden's mother and sister, and which is located at 45 Chester Street, in the neighborhood of Brownsville, Brooklyn, New York.

14. Christopher Dryden, who was 38 years old at the time, and his wife, who was 28 years old at the time, had no criminal or arrest records of any kind.

15. When Mr. Dryden answered the door, he was met by Defendant Officers Robbert and Ward who stated that the volume of Mr. Dryden's stereo was too high and instructed him to lower it.

16. Mr. Dryden, who was still standing in the doorway while the Defendant Officers remained outside, responded by apologizing and agreeing to comply with the Officers' request that he turn down his stereo.

17. At that point, without explanation or justification, and without seeking or being granted a warrant or permission of any kind, Defendant Officers Robbert and Ward, pushed past Mr. Dryden, burst into the Drydens' home, and began opening drawers, rooting through cupboards, and otherwise commencing an unauthorized search.

18. After about 10 minutes of fruitless rummaging, one of the Defendant Officers, in an apparent attempt to manufacture a pretextual justification for the illegal search, suddenly stated that he thought he might smell marijuana.

19. Officers Robbert and Ward then resumed their unauthorized search, opening the Drummonds' closets, digging through underwear drawers, and leaving piles of towels, linens, and other personal items strewn about the floor.

20. As the illegal search continued, Defendant Officers Robbert and Ward began taunting Mr. Dryden and his wife, stating in sum and substance, "We know you have weed. We know you have guns," and maliciously threatening to "take away [the Drydens'] kids" if or when they found the alleged contraband.

3

21. Too terrified to speak, Mr. and Mrs. Dryden watched in horror as Defendant Officers Robbert and Ward continued to ransack their apartment.

22. Finally, Mrs. Dryden's sister, who had wandered in from her apartment within the three-family home to see what the commotion was about, instructed Robbert and Ward to discontinue their search, as they had no legal basis for having commenced it.

23. Robbert and/or Ward responded by yelling at Mrs. Dryden's sister in a malicious and threatening manner to, in sum and substance, "Shut up, get out, and mind [her] own business."

24. Fearful that the Defendant Officers might shift their illicit attentions to her next, she complied with the Defendants' demands and returned to her apartment.

25. Shortly thereafter, one of the Defendant Officers found a paper bag on top of the Drydens' refrigerator; upon opening it, the Defendant Officer found that the bag contained two small glassine bags of marijuana.

26. Despite the fact that the Defendant Officers had no basis for believing the marijuana belonged to any particular resident of the three-family home, one of the Defendant Officers nevertheless proceeded to handcuff Mr. Dryden, and walk him out to the Drydens' garage, located several yards behind the main house, while the other Officer continued the search.

27. Once in the garage, the Defendant Officer continued to mock, deride, and ridicule Mr. Dryden, demanding to know "what else" Mr. Dryden might be "hiding," and continuing to threaten him with the prospect of having his children stripped away from him.

28. After approximately 10 minutes of inflicting this unrelenting abuse upon Mr. Dryden, the Defendant Officer returned him, still in handcuffs, to the main house.

29. When Mrs. Dryden saw that her husband was in handcuffs, she burst into tears, terrified for her husband's safety, traumatized by the sight of seeing her husband being so horribly mistreated, and deeply concerned by the prospect that her children, who were asleep in their beds, might awaken and witness the same terrible sight.

30. Of particular concern to Mrs. Dryden was protecting her son, Jahsani, who for much of his young life had voiced glowing appreciation for New York City police, as well as a desire to one day become a police officer himself.

4

31. As the illegal search continued, one of the Defendant Officers found an old, unloaded, .22 caliber firearm packed in a protective case, buried in the back of one of the Drydens' lesser-used closets.

32. Mr. Dryden would subsequently explain that he had long ago packed the weapon away for safekeeping and forgotten about it, having randomly discovered it in a delivery vehicle he had been sharing with a colleague, and wanting to eliminate the risk of ever being pulled over with such a thing near his person.

33. Defendant Officers Robbert and Ward proceeded to search the Drydens' home for approximately 10 more minutes, before formally placing Mr. Dryden under arrest about two hours after their illegal home invasion began.

34. Once Mr. Dryden was delivered to the 73rd Precinct for processing, he was charged with Criminal Possession of a Weapon in the 4th Degree, Criminal Possession of Marijuana in the 5th Degree, and Unlawful Possession of Marijuana, despite the fact that the information which formed the basis for his arrest, detention, and subsequent prosecution was maliciously supplied by Defendant Officers Robbert and Ward with knowledge that it was false.

35. In addition to helping manufacture a false justification for searching the Drydens' home, Defendant Officer Robbert went on to blatantly fabricate material aspects of his written report about the incident.

36. More specifically, Robbert falsely stated that his initial encounter with Mr. Dryden involved witnessing him smoking a marijuana cigarette through the open backdoor of Mr. Dryden's home.

37. Notably, Robbert made this claim, despite also characterizing Mr. Dryden's physical condition as "apparently normal," as opposed to being impaired in some way by marijuana.

38. In addition, no effort was made by any of the defendants to substantiate Officer Robbert's written claim that he had witnessed Mr. Dryden smoking marijuana—there is no record, for example, of Mr. Dryden having been tested for drugs following his arrest, much less any record of Mr. Dryden having tested positive for marijuana—once again giving rise to an inference that Defendant Officer Robert deliberately and maliciously fabricated material aspects of his report.

5

39. Nevertheless, despite the obvious problems associated with Officer Robbert's investigation and report, Defendant/Supervising Officer Sergeant Nikki Prasad unquestioningly approved it, thereby proximately and directly causing the prosecution of Mr. Dryden to go forward, and giving rise to an inference that Prasad was either willfully indifferent to Mr. Dryden's rights and/or the veracity of Robbert's report, or through silence and inaction, deliberately seeking to aide in the advancement of Officer Robbert's scheme.

40. Sergeant Prasad's approval of Defendant Officer Robbert's fabricated arrest report was made all the more troubling when just three months after Mr. Dryden's arrest, a July 2010 New York Times exposé (a true and correct copy of which is attached hereto as **Exhibit A**) revealed that between 2006 and 2010, residents of Brownsville, Brooklyn were subjected to a dramatically disproportionate amount of police stops compared with residents of other areas of New York City, in part because officers at the 73rd Precinct were under significant pressure to carry out a Departmental policy mandating officers to achieve certain "floor numbers" (i.e., quotas) of stops and/or arrests.

41. Mr. Dryden was incarcerated for approximately 24 hours before being released on bail, and his prosecution continued for some 9 months, requiring multiple court appearances, missed work and loss of income, as well as extra childcare costs, legal fees, and the endurance of significant amounts of humiliation, anxiety, and emotional distress.

42. Thankfully, the unjust prosecution of Mr. Dryden was brought to an end on December 1, 2010, when Judge Gilbert Hong dismissed all charges against Mr. Dryden after the Assistant District Attorney reported, on record, that the Defendant Officers had, in fact, perpetrated an illegal search on the Drydens' home.

43. There is no evidence that any of the Defendant Officers was ever disciplined for their flagrant violations of Mr. and Mrs. Drydens' rights.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS AGAINST
## DEFENDANTS ROBBERT, WARD, PRASAD AND THE CITY OF NEW YORK

### Violation of Constitutional Rights Under Color of State Law
### —Warrantless Entry Into and Search of Home—

44. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 43.

45. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials. Specifically, the Fourth Amendment precludes police officers from entering and searching someone's home in the absence of appropriate process—e.g., a warrant—or special circumstances.

46. Defendant Officers Robbert and Wards' search of Christopher and Sumintra Dryden's home, in the absence of a warrant or other exigent circumstances, was clearly improper and represents a violation of the Drydens' rights under the Fourth Amendment of the United States Constitution.

47. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

48. Defendants' actions were motivated by bad faith and malice.

49. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs Christopher and Sumintra Dryden have been irreparably injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF CHRISTOPHER DRYDEN AGAINST
## DEFENDANTS ROBBERT, WARD, PRASAD AND THE CITY OF NEW YORK

### Violation of Constitutional Rights Under Color of State Law
### —False Arrest and Imprisonment—

50. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 43.

51. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

52. The actions of Defendant Officers Robbert and Ward detailed above violated Christopher Dryden's rights under the Untited States Constitution. Given the total absence of any legal justification for Defendants Robbert and Ward to enter the Drydens' home and conduct a search in the first place, it was not objectively reasonable for Robbert and/or Ward to arrest Christopher Dryden for anything on April 18, 2010. Moreover, Defendant Officers Robert and Ward had no foreknowledge or reason to believe that any contraband discovered was specifically attributable to Christopher Dryden, as opposed to any other resident of the premises.

53. Defendants' actions were motivated by bad faith and malice.

54. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

55. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Christopher Dryden has been irreparably injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF CHRISTOPHER DRYDEN AGAINST
## DEFENDANTS ROBBERT, WARD, PRASAD AND THE CITY OF NEW YORK

### Violation of Constitutional Rights Under Color of State Law
### —Malicious Prosecution—

56. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 43.

57. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

8

58. Christopher Dryden was prosecuted, without probable cause, relative to two misdemeanor offenses and a violation for the events that took place at his home April 18, 2010.

59. The charges listed above resulted in a loss of liberty for Cristopher Dryden, as he was incarcerated for approximately 24 hours as a result of these false and improper charges, and was forced to fight said charges for some nine months after, incurring substantial financial and emotional costs as a direct result.

60. Mr. Dryden's criminal proceeding was terminated in favor of Mr. Dryden, as the charges in question were dismissed outright.

61. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Christopher Dryden.

62. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

63. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Christopher Dryden has been irreparably injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AGAINST DEFENDANTS ROBBERT, WARD, PRASAD AND THE CITY OF NEW YORK

### Violation of Constitutional Rights Under Color of State Law —Conspiracy to Violate Plaintiffs' Civil Rights—

64. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 43.

65. Defendant Officers Robbert, Ward, and Prasad, acting under color of state law in both their individual capacities and as agents for the City of New York, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiffs' civil rights by:

   a. Agreeing to intentionally fabricate a legal justification for the warrantless entry and search of the Plaintiffs' home.

9

      b. Agreeing to falsely arrest and imprison Christopher Dryden, as aforedescribed.

      c. Agreeing to contrive false charges against Christopher Dryden, as reflected in Defendant Officer Robbert's arrest report, and to cause him to be maliciously prosecuted as aforedescribed.

66. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

67. Defendants' actions were motivated by bad faith, malice, and/or willful indifference.

68. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs Christopher and Sumintra Dryden have been irreparably injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AGAINST DEFENDANTS NIKKI PRASAD AND THE CITY OF NEW YORK

**Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law**

69. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 43.

70. Upon information and belief, Defendant Supervising Officer Sergeant Nikki Prasad was directly responsible for supervising Defendant Officers Robbert and Ward.

71. Upon information and belief, Defendant City of New York and Sergeant Prasad who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiffs' constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making warrantless searches of people's home absent exigent circumstances, and not making arrests without probable cause to believe a crime has been committed.

72. In the alternative, and upon information and belief, Defendants City of New York and Prasad instituted policies addressing the topics listed above, but then through gross negligence, carelessness, malice, and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a deliberate indifference to the constitutional rights of citizens residing in Brownsville, Brooklyn, New York.

73. Defendant Prasad, upon information and belief, has also demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers at the 73rd Precinct.

74. The policies, procedures, customs and practices of the above-named Defendants violated the Constitutional rights of the Plaintiffs under the Fourth Amendment of the United States Constitution.

75. This conduct on the part of Defendants Nikki Prasad and the City of New York also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

76. As a direct and proximate result of the unconstitutional acts described above, the Plaintiffs have been irreparably injured.

## DEMAND FOR PUNITIVE DAMAGES

77. The actions of Defendants described herein were extreme and outrageous, and shock the conscious of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

78. The Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs Christopher and Sumintra Dryden request that this Honorable Court grant them the following relief:

A. A judgment against Defendants Robbert and Ward for compensatory damages, punitive damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of Plaintiffs against Defendant Sergeant Nikki Prasad for compensatory and punitive damages in an amount to be determined by a properly charged jury.

C. A judgment in favor of Plaintiffs against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

D. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

E. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
        May 19, 2011

Respectfully Submitted By:

*(signature)*

Andrew L. Hoffman, Esq.
EDNY Bar Code Number: AH9502
Of Counsel,
The Law Office of Jeffrey Chabrowe, P.C.
Attorney(s) for the Plaintiff
C/O The Law Offices of Andrew L. Hoffman, PLLC
1501 Broadway, 12th Floor
New York, New York 10036
T:      (347) 262-8052
E:      ahoffman@andrewhoffmanlaw.com